**ORDERED.**

**Dated:  June 11, 2025**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

F & B NEGOTIATIONS, LLC,                      Case No. 8:23-bk-01532-RCT
                                              Chapter 11

      Debtor.

_____/

F & B NEGOTATIONS, LLC,
BENJAMIN G. MARTIN,

               Plaintiffs,

v.                                            Adv. No. 8:24-ap-00207-BAJ

JONATHAN YOB,
4300 CLARCONA OCOEE ROAD, LLC,
FISHER AUCTION COMPANY,
1 OAK REAL ESTATE LLC,
JAY MANAGEMENT CORP.,
2726 6TH AVENUE W, LLC.

               Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Proceeding came before the Court for a trial on January 16, 2025, on the Complaint

brought by F & B Negotiations, LLC ("F&B") and Benjamin G. Martin ("Mr. Martin")

(collectively the "Plaintiffs") against Jonathan Yob ("Mr. Yob"), 4300 Clarcona Ocoee Road,

LLC ("4300 Clarcona"), and Jay Management Corp. ("Jay Management") (collectively "Yob"); as well as Fisher Auction Company ("Fisher Auction") and 2726 6TH AVENUE W, LLC ("2726 LLC").

## **Procedural History**

On April 19, 2023, F&B filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Main Case").  As part of its reorganization process, F&B sold various real estate assets, including property located at 2726 6th Avenue W., Bradenton, FL 34205 (the "Property").

In January of 2024, the Court approved the employment of Fisher Auction as the broker/auctioneer for F&B.[1]  On February 12, 2024, the Court approved a sale of the Property pursuant to § 363 of the Bankruptcy Code.   The sale was conducted via auction,[2] at which Yob emerged as the high bidder.   Approximately four months later, the Plaintiffs initiated this Proceeding alleging breach of a purchase and sale agreement by Yob for failing to close on the Property.

## **Findings of Fact**

Fisher Auction distributed marketing materials to solicit potential buyers for the auction of the Property.  Although the pictures in the marketing materials gave the *impression* that the Property was unoccupied,[3]  the materials expressly disclosed otherwise with the following statement: "Current Partial Lease with Upside Potential."[4]   Based upon a review of the marketing materials, Mr. Yob was under the mistaken assumption that the Property was vacant.[5]

---

[1] Main Case, Doc. 201.
[2] Main Case, Doc. 212.
[3] Fisher Auction's Ex. 29, pp. 87-88.
[4] Fisher Auction's Ex. 29, p. 86.
[5] Trial Transcript, p. 157.

On March 28, 2024, the Court held an online auction, and Yob emerged as the high bidder.[6]  Prior to the auction, prospective bidders were permitted to inspect the Property either upon request or at scheduled open houses.[7]  Mr. Yob, however, chose not to inspect the Property.[8]

In early April of 2024, F&B and Yob entered into a purchase and sale agreement (the "PSA") for the Property.  The Court approved the sale of the Property, based on the terms of the PSA, which provided  that the closing would occur on May 9, 2024.[9]  Specifically, Section 6(b)(3) of the PSA provided for Yob to take the property subject to "the general printed exceptions contained in an owner's title insurance policy,"[10] which included exceptions for "[r]ights or claims of parties in possession" and "[e]xisting unrecorded leases and all rights thereunder of the Lessee and of any person claiming by, through or under the Lessees."[11]

On April 25, 2024, 4300 Clarcona assigned its purchase rights to 2726 6TH Ave W, LLC, which is another entity owned by Mr. Yob.  The day prior to the scheduled closing, counsel for Fisher Auction sent an e-mail to Mr. Yob that efforts to reach him about the closing had been unsuccessful.  Due to Mr. Yob's unavailability, the closing did not occur on May 9, 2024, and was consensually rescheduled by the parties to May 23, 2024.  When the second scheduled closing failed to occur an attorney for F&B sent a notice of default via e-mail to Yob[12] stating that failure to cure the default would result in Yob forfeiting its deposit of $74,900.[13]  In response, Yob's attorney alleged that F&B was in default because tenants residing in the

---

[6] Main Case, Doc. 244.
[7] Trial Transcript, p. 26.
[8] Main Case, Doc. 256.
[9] Main Case, Doc. 268.
[10] Fisher Auction's Ex. 1, p. 7 of 17.
[11] Fisher Auction's Ex. 2, p. 4.
[12] Fisher Auction's Ex. 31; Trial Transcript, p. 77.
[13] Fisher Auction's Ex. 31, p. 2.

Property were veterans, and F&B failed to furnish proof that the tenants were evicted or had vacated the Property.[14]  At trial, Mr. Yob testified that his desire to help veterans contributed to his unwillingness to close.[15]

David Fernandez, Debtor's manager, testified that the two tenants at the Property were indeed veterans and that F&B frequently rented to veterans who receive government housing assistance.[16]  Mr. Fernandez also testified that both tenants were relocated to another property owned by F&B in Palmetto, Florida (the "Palmetto Property"),[17] and that one of the tenants was receiving assistance from the Sarasota Housing Authority.[18]  The other tenant was not receiving housing assistance and had no written lease.[19]  These details however, were not disclosed by F&B to Yob until the eve of the trial.

Notably, Mr. Yob is a savvy businessman and experienced real estate investor,[20]  who is very familiar with the real estate closing process.  Specifically, the evidence reflects that Mr. Yob makes multiple real estate purchases annually, typically through holding companies.[21]

## Discussion

The Court's analysis will focus on the terms set forth in the PSA.  Specifically, the PSA clearly states under Section 6(b)(5) that the Buyer takes the property subject to "the general printed exceptions contained in an owner's title insurance policy,"[22] and the Title Commitment

---

[14] Counterclaimants Ex. 20.

[15] Trial Transcript, pp. 172, 179.

[16] Trial Transcript, pp. 113, 239.

[17] Trial Transcript, p. 240 ("I relocated them at our cost.").

[18] F&B presented documentation from the Sarasota Housing Authority that clearly delineated how one tenant was relocated from the Property to the Palmetto Property.  See Fisher Auction Exs.' 32-34.

[19] Trial Transcript, pp. 94, 114.

[20] Trial Transcript, pp. 154-155, 172 (Mr. Yob testified that he has 40 years of experience of owning his own businesses and got his start in real estate when he was very young.  He previously owned an electronics recycling business that operated in ten states.  He also served on numerous boards of directors in the Tampa area. He has "owned a lot of properties" and has "had a lot of tenants.").

[21] See, e.g., Trial Transcript, pp.143, 155 (In 2024, Mr. Yob, through his entities, was the winning bidder of six online real estate auctions.).

[22] Fisher Auction's Ex. 1, p. 7 of 17.

contains exceptions for "rights or claims of parties in possession" and "[e]xisting unrecorded leases."[23]   Taken together, the Court finds these provisions support a finding that F&B was under no obligation to transfer title free and clear of the unwritten leases, regardless of whether or not the tenants vacated prior to closing.

Because the Court finds that the PSA is unambiguous, the clear terms of the PSA must be enforced. *See Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F.Supp.2d 1301, 1307 (M.D. Fla. 2006) ("[T]he court must construe clear and unambiguous contract language as written and according to its plain sense and meaning"); *Dickerson Florida, Inc. v. McPeek*, 651 So.2d 186, 187 (Fla. 4th DCA 1995) (when the contract is clear and unambiguous, the court must give effect to its clear provisions) (citing *Voelker v. Combined Ins. Co. of America,* 73 So.2d 403 (Fla. 1954)); *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F.Supp.2d 1311, 1315 (S.D. Fla. 2007) ("Where the language of a contract is unambiguous, the legal effect of that language is a question of law"); *Gray v. D & J Indus. Inc.*, 875 So.2d 683, 683 (Fla. 3d DCA 2004) ("The construction of a contract is a question of law for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible to only one interpretation").

Yob defaulted by failing to close.  Therefore, as clearly set forth in paragraph 9.a. of the PSA, F&B is entitled to retain the $74,900 deposit as liquidated damages.  The Court finds that Yob's reliance on the language contained in the PSA under paragraph 6.b is misplaced because it ignores the controlling, contractual language that follows, which the Court discussed above. Therefore, it is unnecessary to address Yob's argument regarding the interplay between §§ 363(b), (f) and §365(h).

---

[23] Fisher Auction's Ex. 7.

Mr. Yob is a sophisticated investor in the real estate market.  As such, the Court finds that there is no equitable remedy that would relieve him of his legal obligations.  Additionally, while Mr. Yob's concern for veterans is admirable, it does not provide him with a legal justification for failing to close on the Property.  Contractually, F&B was under *no* obligation to either evict the tenants or provide proof of them vacating the Property.  Further, although Mr. Yob had the opportunity to inspect the Property prior to the auction he did not do so.[24]  Only after successfully bidding did Mr. Yob inspect the Property and become aware of the tenants.  Mr. Yob's reasons for Yob's failure to close on the Property due to an illness and Mr. Yob's concerns over the tenant situation, are insufficient to relieve Yob of its contractual obligation.[25]

### Conclusion

The PSA required F&B to furnish clear title to Yob, with the following exceptions: (1) claims of parties in possession; and (2) existing unrecorded leases.  Mr. Yob's incorrect assumption that the Property was vacant based on the marketing materials is not a legitimate basis for Yob's failure to close because (i) Mr. Yob did not avail himself the opportunity to inspect the Property prior to the auction, and (ii) the marketing materials *expressly* disclosed that the Property was leased.

The Court will hold a separate hearing to consider an award of attorney's fees.  The PSA provides in Section 18 that the non-prevailing party will be liable for the *reasonable* attorney's fees of the prevailing party.[26]  The Court will, however, consider the reasonableness of the

[24] Trial Transcript, pp. 27,147, 149.
[25] Trial Transcript, pp. 206
[26] Fisher Auction's Ex. 1, p. 12.

attorney's fees in light of F&B's failure to furnish Yob with relevant explanations as to the tenant situation and documentation until the eve of trial.[27]

The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

---

[27] The Court encourages the parties to attempt to reach a resolution on the matter of attorney's fees.